UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHEILA KAY THOMPSON,

     Plaintiff,

v.                                                    CASE No. 8:12-CV-2457-T-TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

     Defendant.

_____

 O R D E R

     The plaintiff in this case seeks judicial review of the denial of

her claims for Social Security disability benefits and supplemental security

income payments.[2]   However, in violation of the Scheduling Order and

Memorandum Requirements, the plaintiff did not properly identify a discrete

issue, and support that issue by citation to the record of pertinent facts, so that

no issue was properly developed warranting reversal.  Moreover, because the

_____

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action.  See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed on this ground also.

I.

The plaintiff, who was forty-nine years old at the time of the administrative hearing and who has an eleventh grade education, has worked as a bagger, custodian, grill cook, and laborer (Tr. 45, 48, 187, 243). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to mental illness, anxiety, depression, panic attacks, and high blood pressure (Tr. 179). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "depression, post-traumatic stress disorder, and a history of alcohol and cocaine abuse in remission" (Tr. 26). He found further (Tr. 28):

> [T]he claimant has the residual functional capacity
> to perform work without exertional limitations
> other than what one would expect for one of her

-2-

> gender and age; however the claimant is limited to
> work involving relatively simple tasks, limited
> contact with the general public, and no climbing of
> ladders, ropes, or scaffolds.

The law judge therefore determined that the plaintiff could return to her past

work as a custodian (Tr. 32). Alternatively, the law judge decided, based

upon testimony from the vocational expert, that other jobs exist in significant

numbers in the national economy that the plaintiff could perform, such as

produce inspector, mail room clerk, and laundry sorter (Tr. 33). Accordingly,

the law judge ruled that the plaintiff was not disabled (id.). The Appeals

Council let the decision of the law judge stand as the final decision of the

Commissioner.

II.

A. In order to be entitled to Social Security disability benefits

and supplemental security income, a claimant must be unable "to engage in

any substantial gainful activity by reason of any medically determinable

physical or mental impairment which ... has lasted or can be expected to last

for a continuous period of not less than twelve months." 42 U.S.C.

423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the

-3-

terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. 423(d)(3), 1382c(a)(3)(D).  The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520, 416.920. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20

C.F.R. 404.1520(b), 416.920(b).  If not, the next inquiry (step two) is whether

a claimant has a severe impairment.  20 C.F.R. 404.1520(c), 416.920(c).  An

impairment is not severe if it does not significantly limit a claimant's physical

or mental abilities to do basic work activities.  20 C.F.R. 404.1521(a),

416.921(a).  If there is not a severe impairment, then a claimant is deemed to

be not disabled.  20 C.F.R. 404.1520(c), 416.920(c).

　　　　When an impairment is severe, the next inquiry (step three) is

whether it meets, or equals, a listing in Appendix 1.  20 C.F.R. 404.1520(d),

416.920(d).  If not, a further inquiry (step four) is made as to whether the

impairment prevents the claimant from doing past relevant work.  20 C.F.R.

404.1520(f), 416.920(f).  If a claimant cannot do such work, an additional

determination (step five) is made concerning whether the claimant can

perform other work which exists in significant numbers in the national

economy.  20 C.F.R. 404.1520(g), 416.920(g).

III.

　　　　The plaintiff articulates one challenge to the law judge's decision

in her argument: "The Commissioner erred by failing to fully and adequately

consider all of the claimant's impairments, in full combination" (Doc. 20, p.

5). Also, at the beginning of her memorandum, the plaintiff indicates that she intends to challenge the law judge's decision solely on the ground that "[t]he Commissioner erred in failing to fully and adequately consider all of the medical evidence of record" (id., p. 2). It is not clear whether these two issues are the same. Regardless, the plaintiff has failed to support any such contention in violation of the Scheduling Order and Memorandum Requirements, which directs that "[t]he Plaintiff must identify with particularity the discrete grounds upon which the administrative decision is being challenged" and that "any such discrete challenges must be supported by citations to the record of the pertinent facts" (Doc. 12, p. 2).

The requirement to identify specific issues was adopted for several reasons. Thus, it was designed to make the attorney focus on discrete issues and develop arguments related to, and limited to, those issues. It is common for lawyers to make stream-of-consciousness comments that touch on various issues seen in Social Security cases. That practice requires the court to spend unnecessary time to determine the argument that is being asserted. In a court division like this one with an enormous volume of Social Security cases, such a time-consuming approach is unacceptable. Moreover,

this circumstance presents the need for the court inappropriately to develop the argument in order to address it. In addition, it is also unfair to the Commissioner who has to struggle to figure out what contentions need to be answered.

In this case, the plaintiff has stated one (or maybe two) vague and general issue(s). She has set forth several pages of legal principles, most, but not all, of which relate to the issue(s) (Doc. 20, pp. 5-7). However, there are no facts stated that develop any articulated issue. Consequently, as the Scheduling Order and Memorandum Requirements cautioned, any stated issue is forfeited.

It is recognized that several pages into the plaintiff's argument, she does develop an argument. Thus, the plaintiff asserts that "there was a failure, throughout the decision, to consider the ramifications of the Plaintiff's limited IQ, including at Step 2 of the sequential evaluation, at Step 3, and at Steps 4 and 5" (id., p. 8). This issue was not stated either at the beginning of the memorandum as one of the alleged errors (see id., p. 2) or at the heading of the argument (see id., p. 5). Therefore, under the Scheduling Order and

Memorandum Requirements, the issue is forfeited.    Under these circumstances, the decision will be affirmed.

Nevertheless, aside from the forfeiture of the issue, the plaintiff's arguments regarding her IQ scores do not warrant reversal.   Notably, the plaintiff makes no argument about her physical condition, or her mental impairments other than her IQ scores.

The plaintiff challenges the law judge's decision for its failure to find that the plaintiff's IQ constituted a severe impairment at step two of the sequential analysis (id., pp. 8-11).   This contention fails.

The Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).  Because the law judge found that the plaintiff has severe impairments, he did not stop prematurely at step two, but proceeded on to the following steps in the sequential analysis.  See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).   Consequently, in order to demonstrate reversible error based upon a mistake regarding a level of severity of an impairment, the plaintiff must show that she had functional limitations from

that condition that were not included in the law judge's determination of the plaintiff's residual functional capacity.

Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra.

The law judge concluded that the plaintiff had severe mental impairments of depression and post-traumatic stress disorder (Tr. 26). Accordingly, he limited the plaintiff "to work involving relatively simple tasks" (Tr. 28). The plaintiff has made no attempt to show that in light of her IQ scores she has any greater functional limitation (see Doc. 20, pp. 8-11). Consequently, even if the law judge erred by failing to find at step two of the sequential analysis that the plaintiff had a severe impairment of borderline intellectual functioning (a contention that the plaintiff does not articulate), that error would be harmless.

The plaintiff also argues with respect to step three that, "had the proper consideration been given regarding her IQ," she would have been found disabled under listing 12.05 C of Appendix 1 for mental retardation (id., p. 13). A condition listed in Appendix 1 (20 C.F.R. Part 404, Subpart P, Appendix 1) is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations. Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). The plaintiff bears the burden of showing that she meets, or equals, a listing. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, "when a claimant contends that [s]he has an impairment meeting the listed impairments entitling h[er] to an adjudication of disability under regulation 404.1520(d) [or 416.920(d)], [s]he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative [s]he contends that [s]he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986).

As indicated, the plaintiff contends that her IQ scores should
have resulted in a finding of disability under listing 12.05 C of Appendix 1.
That listing states:

> 12.05 *Mental Retardation*:   Mental retardation
> refers to significantly subaverage general
> intellectual functioning with deficits in adaptive
> functioning initially manifested during the
> developmental period; *i.e.*, the evidence
> demonstrates or supports onset of the impairment
> before age 22.
>
> The required level of severity for this disorder is
> met when the requirements in A, B, C, or D are
> satisfied.
>
>                          . . .
>
> C. A valid verbal, performance, or full scale IQ of
> 60 through 70 and a physical or other mental
> impairment imposing an additional and significant
> work-related limitation of function; ....

The plaintiff predicates her argument on the report of Dr. John
Dabrowski, a psychologist who, in April 2010, administered the Wechsler
Adult Intelligence Test-IV (WAIS-IV) in connection with an "evaluation to
help with vocational planning" (Tr. 553).  The Commissioner acknowledges
that Dr. Dabrowski said some of the plaintiff's scores were below 70 (Doc.
21, p. 5).  Dr. Dabrowski further explained (id.):

> Towards the end of testing [the plaintiff] began
> stating she was tired and wanted to go home and
> she would yawn frequently during directions to
> tasks. She cooperated with evaluation procedures
> and her effort appeared fair with declining effort at
> the end of testing due to reduced frustration
> tolerance.

Dr. Dabrowski's impression included "[b]orderline intellectual functioning

with personality diagnosis deferred" (Tr. 557).

The law judge found that the plaintiff did not meet, or equal, an

Appendix 1 listing (Tr. 26), although he did not expressly mention listing

12.05. This was reasonable because no doctor has opined that the plaintiff

meets, or equals, listing 12.05. Thus, as the Commissioner correctly points

out (Doc. 21, pp. 5, 12-13), Dr. Dabrowski concluded that the plaintiff has

borderline intellectual functioning (Tr. 557), not mental retardation.

Accordingly, the law judge stated that "[t]esting results showed intellectual

functioning on the borderline range" (Tr. 30).

Further, Dr. Dabrowski's report calls into question the validity

of the plaintiff's IQ scores. As indicated, Dr. Dabrowski stated that the

plaintiff's "effort appeared fair with declining effort at the end of testing due

to reduced frustration tolerance" (Tr. 555). The law judge specifically noted

this statement (Tr. 32).   Consequently, he could reasonably discount the plaintiff's IQ scores.

The conclusion that the plaintiff does not meet, or equal, listing 12.05 C is also supported by the opinion of Dr. Michael Stevens, a nonexamining reviewing psychologist.  Dr. Stevens filled out a Psychiatric Review Technique form which indicated that the plaintiff did not meet, or equal, a listed impairment. Thus, he did not check the spaces at the beginning of the form for meeting, or equaling, a listed impairment (Tr. 490).  Further, with respect to listing 12.05 for mental retardation, he did not mark the space for "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function" (Tr. 494).

In sum, the law judge could reasonably conclude that the plaintiff did not have the requisite IQ scores to satisfy listing 12.05 C.

The plaintiff asserts that, if "the [IQ] testing process was deemed deficient or invalid, the Commissioner should have either recontacted the evaluator for clarification as to the validity of the test, or ordered a new examination" (Doc. 20, p. 11).  This contention is hard to credit since the

-14-

plaintiff was twice scheduled for psychological examinations in the early stages of the case, and she failed to show up for either of them (Tr. 427). Regardless, the contention is unavailing.

The regulations pertinently provide that, if there is an inconsistency or insufficiency in the evidence, the law judge can consider various ways to resolve that problem, which, at the law judge's choice, may, or may not, involve recontacting a doctor. 20 C.F.R. 404.1520b(c)(1), 416.920b(c)(1). The law judge obviously concluded that the record was adequate to render a disability determination. That conclusion was plainly reasonable.

Moreover, there is no reason to think that new IQ scores would establish that the plaintiff has valid IQ scores that satisfy listing 12.05 C. Thus, from all that appears, the plaintiff would have the same frustration completing a second test.

Further, in order to meet listing 12.05 C, the plaintiff has to demonstrate not only that she has a qualifying IQ score, but also that she has "deficits in adaptive functioning initially manifested during the developmental period." Accordingly, in Crayton v. Callahan, 120 F.3d 1217,

-15-

1219 (11th Cir. 1997) (emphasis added), the court said that, "[t]o be considered for disability benefits under section 12.05, a claimant must <u>at least</u> (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22."

The plaintiff has made no attempt to demonstrate that she had deficits in adaptive functioning at all, much less that they manifested before age 22. In fact, the record contradicts adaptive functioning deficits. Thus, as the law judge explained, the plaintiff "has been working [as a custodian] on average 30 hours a week" and "she is able to live independently and take care of her basic needs" (Tr. 31). The record also shows that the plaintiff has worked as a bagger, grill person, and laborer (Tr. 187). Further, in function reports, the plaintiff and her daughter indicated that the plaintiff is able to attend school and church, go shopping, prepare simple meals, and perform household chores (Tr. 201, 202, 203, 213, 214, 215). Finally, an October 2009 psychological assessment from Drug Abuse Comprehensive Coordinating Office, Inc., states that the plaintiff was "[c]urrently enrolled in GED program" (Tr. 528). In light of these circumstances, the plaintiff

presumably did not have deficits in adaptive behavior before age 22, and she clearly does not have them now.

For these reasons, the plaintiff cannot demonstrate that she meets, or equals, listing 12.05 C.

With respect to step four concerning past relevant work, the plaintiff, although asserting in conclusory fashion that the law judge failed to consider the ramifications of the plaintiff's IQ at step four, makes no argument regarding that matter. That is understandable because any such argument would be frivolous.

The plaintiff has been working as a custodian at Tampa's Convention Center and was still working at that job at the time of the hearing (Tr. 50). Obviously, her IQ did not impair her ability to do that job.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this

Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 6th day of February, 2014.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE